UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

MARLENE MAZUR,

         Plaintiff,

v.

TOWNSHIP OF MARLBORO, *et al.*,

         Defendants.

Case No. 3:16-cv-05527-BRM-DEA

**OPINION**

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendants Township of Marlboro (the "Township") and Chief of Police Bruce E. Hill's ("Chief Hill") Motion for Summary Judgment. (ECF No. 33-2.) Additionally, Donna Gonzalez ("Officer Gonzalez") moves for Summary Judgment. (ECF No. 32.) Plaintiff Marlene Mazur ("Mazur") opposes the motions. (ECF Nos. 37, 38.) Having reviewed the submissions filed in connection with the Motions and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause shown, the Township and Chief Hill's Motion for Summary Judgment is **DENIED**, and Officer Gonzalez's Motion for Summary Judgment is **GRANTED in part and DENIED in part**.

**I. BACKGROUND**

The parties agree on the following timeline but contest several details which will be discussed *infra*. This action arises out of an incident on January 24, 2016, where Officer Gonzalez of the Marlboro Township Police Department was dispatched to Boundary Road for an argument between a male and female in the street. (ECF No. 32-1 ¶ 1 and ECF No. 37 ¶ 1.) It was later determined that the female and male were Plaintiff Marlene Mazur ("Mazur") and her husband

1

Randy Mazur. (ECF No. 32-1 ¶ 2 and ECF No. 37 ¶ 2.) Mazur was yelling at her husband in front of a Good Samaritan who was trying to help Mazur's husband free Mazur's car from a snowbank. (ECF No. 32-1 ¶ 2-4 and ECF No. 37 ¶ 4.) Ultimately, Mazur left the car where it was and walked up to the house with her husband. (ECF No. 32-1 ¶ 6 and ECF No. 37 ¶ 6.) Meantime, Mazur's son, Robert, went down the driveway and was able to free the stuck vehicle and drive it into the garage. (*Id.*) Following this, Officer Gonzalez pulled into the driveway at 225 Boundary Rd. where she observed the vehicle in the garage with the garage door open. (ECF No. 32-1 ¶¶ 11-12 and ECF No. 37 ¶¶ 11-12). Officers Meglio and Schuster were also present. (ECF No. 32-1 ¶ 13 and ECF No. 37 ¶ 13.) At that point, at least one of the officers spoke to Robert by the entrance to the garage door. (ECF No. 32-1 ¶ 17 and ECF No. 37 ¶ 17.) Eventually, Mazur told her son to get into the house and stated, "We're done with this." (ECF No. 32-1 ¶ 20 and ECF No. 37 ¶ 20.) Mazur requested a search warrant and asked the officers what she had done wrong. (ECF No. 32-1 ¶ 24 and ECF No. 37 ¶ 24.) When Officer Gonzalez told Mazur that the officers needed to check on her husband, Mazur stated that her husband was fine and was sleeping. (ECF No. 32-1 ¶ 25 and ECF No. 37 ¶ 25.) Mazur told the officers she was going to call the Colts Neck police and went to the kitchen to do so. (ECF No. 32-1 ¶ 29 and ECF No. 37 ¶ 29.) At some point, Officer Gonzalez hit Mazur with a closed fist strike. (ECF No. 32-1 ¶ 35 and ECF No. 37 ¶ 35.) Mazur was transferred to the Marlboro police headquarters, where she received an ice pack for her swollen eye and was eventually released with charges of obstruction and assault on a police officer. (ECF No. 32-1 ¶¶ 45-46 and ECF No. 37 ¶¶ 45-46.)

The parties dispute the details of the events leading up to and including Officer Gonzalez's punch. The following is Officer Gonzalez's version of the events. Officer Gonzalez claims Mazur was uncooperative and combative towards the officers when they arrived. (ECF No. 37 ¶ 19.)

Additionally, as Officer Gonzalez attempted to speak to Mazur, Mazur began yelling "you have no right to be here." (ECF No. 32-1 ¶ 22.) After Officer Gonzalez told Mazur her investigation would be complete once they verified Mazur's husband's well-being, Mazur refused and put her hands on Officer Gonzalez. (*Id.* ¶¶ 25-26.) Following this contact, Officer Gonzalez warned Mazur she would be arrested if she touched Officer Gonzalez again. (*Id.* ¶ 28.) Next, Mazur turned away and ran toward her kitchen as Officer Gonzalez told Mazur to return. (*Id.* ¶¶ 29-30.) At this point, Mazur turned around and began walking quickly toward Officer Gonzalez. Officer Gonzalez then claims Mazur "reared back with all her might and two-hand shoved [her] into the wall." (*Id.* ¶ 33.) Once Officer Gonzalez recovered from the contact, she immediately defended herself with a closed fist strike that brought Mazur to the ground. (*Id.* ¶ 35.)

Mazur's version of the facts is decidedly different. First, Mazur claims she was not yelling at the officers at any point during the confrontation. (ECF No. 37 ¶ 19.) While she did request a warrant from the officers, Mazur did not yell her request. (*Id.* ¶ 23.) Further, Mazur maintains the contact she made with Officer Gonzalez was a result of Officer Gonzalez walking into her. (*Id.* ¶ 26.) Mazur had her hands up to protect her face, fearing Officer Gonzalez was going to hit her. (*Id.*) While Mazur admits Officer Gonzalez told her she would be arrested if she touched Officer Gonzalez again, she continued to maintain that she never touched Officer Gonzalez. (*Id.* ¶ 28.) Additionally, Mazur claims she walked toward the kitchen to call the Colts Neck Police because she was extremely frightened by the actions of the officers. (*Id.* ¶ 29.) Further, Mazur complied with Officer Gonzalez's request that she return from the kitchen and noted Officer Gonzalez had her hand on her service weapon on her hip. (*Id.* ¶ 30.) Finally, Mazur flatly denies pushing Officer Gonzalez. (*Id.* ¶¶ 32-33.) Instead, Mazur put her hands up when Officer Gonzalez approached her, and Officer Gonzalez walked into Mazur's hands. (*Id.* ¶ 32.) Mazur describes the contact as her

hands "barely grazing" Officer Gonzalez. (*Id.* ¶ 35.) Ultimately, Gonzalez's punch shattered Mazur's left orbit, requiring surgery and "causing permanent orthopedic and neurological injuries." (*Id.*)

On February 14, 2017, the Monmouth County Prosecutor's Office sent a letter to Lieutenant Christie McKenna of the Marlboro Police Department stating the Prosecutor's Office declined to file criminal charges for excessive force against Officer Gonzalez. (ECF No. 32-1 ¶ 48 and ECF No. 37 ¶ 48.) Additionally, the Marlboro Police Department conducted an internal affairs investigation in which Lieutenant McKenna determined there had been no violations of Marlboro Township rules and regulations. (ECF No. 32-1 ¶ 49 and ECF No. 37 ¶ 49.) However, Mazur's expert, Richard Rivera, issued a report on December 5, 2018, concluding Officer Gonzalez used excessive force when she punched Mazur. (ECF No. 32-1 ¶ 50 and ECF No. 37 ¶ 50.) In response, Defendants submitted the expert report of Dr. Richard Celeste which disagreed with Rivera's findings. (ECF No. 32-1 ¶ 51 and ECF No. 37 ¶ 51.)

Mazur initiated this action on September 19, 2016. (ECF No. 1) On September 27, 2016, Mazur filed her Amended Complaint alleging: (1) § 1983 violation for use of excessive force; (2) § 1983 violation of the Fourth Amendment to be free from unreasonable searches and seizures; (3) § 1983 violation for false arrest; (4) § 1983 violation for failure to intervene; (5) § 1983 violation for malicious prosecution; (6) § 1983 violation for failure to supervise; (7) § 1983 violation for inadequate training and failure to implement lawful customs, practices, and policies; and (8) violation of the New Jersey Civil Rights Act ("NJCRA"). (ECF No. 3.) On October 6, 2016, Meglio filed an Answer to the Amended Complaint. (ECF No. 6.) On October 12, Chief Hill and the Township filed an Answer to the Amended Complaint. (ECF No. 7.) On October 13, Officer Gonzalez filed an Answer to the Amended Complaint. (ECF No. 8.)

On May 9, 2019, Officer Gonzalez filed a Motion for Summary Judgment. (ECF No. 32.) Additionally, on May 10, 2019, Chief Hill and the Township filed a Motion for Summary Judgment. (ECF No. 33.)

## II. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is material "if it bears on an essential element of the plaintiff's claim," and is genuine if "a reasonable jury could find in favor the non-moving party." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, [however,] there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met this initial burden, the burden shifts to the non-moving party who must provide evidence sufficient to establish that a reasonable jury could find in the non-movant's favor to warrant the denial of summary judgment. *Lawrence v. Nat'l Westminster Bank N.J.*, 98 F.3d 61, 65 (3d Cir. 1996); *Serodio v. Rutgers*, 27 F. Supp. 3d 546, 550 (D.N.J. 2014) "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its

5

favor at trial. However, the party opposing the motion for summary judgment cannot rest on mere allegations, instead it must present actual evidence that creates a genuine issue of material fact for trial." *Serodio*, 27 F. Supp. 3d at 550. There can be "no genuine issue as to any material fact" if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

## III. DECISION

### A. Claims Against Officer Gonzalez

#### 1. Qualified Immunity

Officer Gonzalez argues she is entitled to qualified immunity because she did not violate any of Mazur's constitutional rights. (ECF No. 32-1 at 12.) Qualified immunity "shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658 (2012)). Government officials are therefore immune from suit in their individual capacities unless the facts alleged show: (1) a violation of a constitutional right; and (2) that the constitutional right was "clearly established" at the time of a defendant's alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). While the question of qualified immunity is generally a question of law, "a genuine issue of material fact will preclude summary judgment on qualified immunity." *Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009); *see also Curley v. Klem*, 298 F.3d 271, 278 (3d Cir. 2002) (noting that "a decision on qualified immunity will be premature when there are unresolved

disputes of historical fact relevant to the immunity analysis.") Therefore, the Court must deny summary judgment if the plaintiff's version of the facts demonstration of violation of the plaintiff's clearly established constitutional rights.

### i. Illegal Search and Seizure

Officer Gonzalez contends she is entitled to qualified immunity on the illegal search and seizure claim because she lawfully entered Mazur's home under the emergency aid exception to the warrant requirement. (ECF No. 32-1 at 20.) Mazur does not oppose this in her reply brief. (*See generally* ECF No. 37.)

To justify a warrantless search under the emergency aid exception: (1) the officer must have had an objectively reasonable basis to believe an emergency existed where he needed to provide assistance to protect life or prevent injury; and (2) there must be a reasonable nexus between the emergency and the area searched. *State v. Edmonds*, 47 A.3d 737, 746 (N.J. 2012). Here, Officer Gonzalez responded to a report of an argument between an intoxicated male driver and a female who was yelling. (*See* ECF No. 32-4, Ex. C; ECF No. 32-5 Ex. D at 47:7-51:9.) Based on the report, Officer Gonzalez believed she was responding to a domestic violence incident. (ECF No. 32-4, Ex. C.)

Under New Jersey law, the prevention of domestic violence is "high on the list of exigent circumstances" that justify the use of the emergency aid doctrine. *State v. Fede*, 202 A.3d 1281, 1286 (N.J. 2019). Additionally, "[a]llegations of domestic violence, even if coming from a seemingly anonymous source, cannot be breezily dismissed and must be investigated." *Edmonds*, 47 A.3d at 750. Therefore, when there is a reasonable allegation of domestic violence, the emergency aid doctrine allows police to enter a home without a warrant to conduct a welfare check. *Id.* at 737.

Here, in response to an allegation of domestic violence, Officer Gonzalez told Mazur that the police needed to enter Mazur's home to check on her husband. (ECF No. 32-4, Ex. C.) Despite Mazur's refusal, Officer Gonzalez was justified in making a warrantless entry to perform a welfare check on Mazur's husband. Because this situation falls firmly within the emergency aid exception to the warrant requirement, there is no Fourth Amendment violation here. Therefore, Officer Gonzalez is entitled to qualified immunity on the illegal search and seizure claim. Accordingly, Officer Gonzalez's Motion for Summary Judgment on Count Two of the Amended Complaint is **GRANTED.**

### ii. Excessive Force

Officer Gonzalez contends she did not violate Mazur's rights because she did not use excessive force. (ECF No. 32-1 at 23.) To prove an excessive force claim under the Fourth Amendment, a plaintiff must demonstrate that an officer's actions were not objectively reasonable considering the totality of the circumstances. *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989). Although reasonableness is a factual question, summary judgment is appropriate "if the district court concludes, after resolving all factual disputes in favor the plaintiff, that the officer's use of force was objectively reasonable under the circumstances." *Kopec v. Tate*, 361 F.3d 772, 777 (3d Cir. 2004). Among factors to be considered in determining objective reasonableness are (1) the severity of the crime, (2) whether the suspect poses an immediate threat to the safety of the officers or others, (3) whether he is actively resisting arrest, (4) the possibility that the person is violent or dangerous, (5) the duration of the action, (6) whether the action takes place in the context of effectuating an arrest, (7) the possibility that the suspect may be armed, and (8) the number of persons with whom the police officers must contend at one time. *Sharrar v. Felsing*, 128 F.3d 810, 820 (3d Cir. 1997).

The parties dispute facts related to the reasonableness of Officer Gonzalez's conduct, including: (1) whether Mazur was yelling and acting uncooperative; (2) whether Mazur touched Officer Gonzalez in the first instance; (3) whether Mazur walked or ran back to Officer Gonzalez; and (4) whether Mazur shoved Officer Gonzalez into a wall. In viewing the facts in the light most favorable to Mazur, the Court cannot conclude that Officer Gonzalez's "use of force was objectively reasonable as a matter of law" at this juncture. *Abraham v. Raso*, 183 F.3d 279, 296 (3d Cir. 1999); *see also Murdock v. Borough of Edgewater*, No. 08-2268, 2011 U.S. Dist. LEXIS 126428 at *15 (D.N.J. Nov. 2, 2011); *Landa v. Twp. of Plainsboro*, No. 13-3082, 2016 U.S. Dist. LEXIS 114444 at *36 (D.N.J. Aug. 24, 2016). Therefore, the Court finds a dispute of material facts exists as to whether Officer Gonzalez used excessive force and therefore violated Mazur's Fourth Amendment rights.

Additionally, Mazur must demonstrate a genuine dispute of material fact exists as to whether the constitutional right violated was clearly established. "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (quoting *Reichle v. Howard*, 566 U.S. 658, 664 (2012). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). A district court "may not deny a summary judgment motion premised on qualified immunity without deciding that the right in question was clearly established at the time of the alleged wrongdoing." *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 637 n. 4 (3d Cir. 2015).

Mazur has adequately raised a genuine dispute of material fact. "The right to be free from an unprovoked beating is clearly established." *Hill v. Algore*, 85 F. Supp. 2d 391, 409 (D.N.J. 2000); *see also Thompson v. Montemuro*, 383 F. Supp. 1200, 1203 (E.D. Pa. 1974). Applying the

evidence most favorable to Mazur, a reasonable officer could not have believed that punching an unarmed woman who was not resisting arrest or physically assaulting an officer was lawful. Where material issues of fact remain unsettled, denying a finding of qualified immunity is appropriate. *See Giles v. Kearney*, 571 F.3d 318, 328 (3d Cir. 2009) (reversing district court for finding qualified immunity in excessive force case where "such a legal conclusion . . . rests on a factual presumption that is inappropriate on summer judgment"); *Curley v. Klem*, 298 F.3d 271, 278 (3d Cir. 2002) ("[A] decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis.") Therefore, Officer Gonzalez is not entitled to qualified immunity at this stage. Accordingly, Officer Gonzalez's Motion for Summary Judgment on Count One of the Amended Complaint is **DENIED.**

### iii. Failure to Intervene

An officer is directly liable under § 1983 if that officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation takes place in his presence. However, because Officer Gonzalez is alleged to have participated in the constitutional violation, Mazur may not assert a failure to intervene claim against Officer Gonzalez. *See Degorat v. Felsman*, No. 16-01186, 2019 U.S. Dist. LEXIS 24838 at *12-13 (M.D. Pa. Feb. 15, 2019); *see also Flint v. Cty. of Milwaukee*, 91 F. Supp. 3d 1032, 1064 (E.D. Wis. 2015) ("An officer cannot intervene in his own constitutional violation.") Because it is undisputed that Officer Gonzalez punched Mazur, and that punch is the basis of the failure to intervene claim, Mazur cannot assert such claim against officer Gonzalez. Accordingly, Officer Gonzalez's Motion for Summary Judgment on Count Four of the Amended Complaint is **GRANTED.**

### iv. False Arrest and Imprisonment

Officer Gonzalez contends Mazur cannot maintain a false arrest claim against her because

Officer Gonzalez reasonably believed she had probable cause to arrest Mazur. (ECF No. 32-1 at 24.)

To successfully state a Fourth Amendment claim for false arrest, a plaintiff must prove: (1) there was an arrest; and (2) the arrest was made without probable cause. *See Pollock v. Cty. of Philadelphia*, 403 F. App'x 664, 669 (3d Cir. 2010). Additionally, an arrestee may also maintain a § 1983 claim for false imprisonment based on a detention pursuant to that arrest. *Adams v. Selhorst*, 449 F. App'x 198, 201 (3d Cir. 2011).

Here, Mazur's false arrest and imprisonment claims fail because she cannot demonstrate that the arrest was made without probable cause. The Third Circuit has stated "a guilty plea—even one for a lesser offense—does not permit a later assertion of no probable cause." *Walker v. Clearfield Cnty. Dist. Attorney*, 413 F. App'x 481, 483-84 (3d Cir. 2011). Mazur's guilty plea to the amended charge under Colts Neck ordinance 2C:1-4—which arose out of the same events as her false arrest claim—directly contradicts her assertion that no probable caused existed for the alleged arrest. Because Mazur cannot demonstrate the absence of probable cause, summary judgment must be entered in favor of Officer Gonzalez on her false arrest claim. *See McGann v. Collingswood Police Dep't*, No. 10-3458, 2012 U.S. Dist. LEXIS 178019 at *31 (D.N.J. Dec. 17, 2012) (finding plaintiff did not have a viable claim for false arrest as a matter of law in light of his guilty plea to a municipal ordinance violation which was a reduction from an original criminal charge); *Martinez v. New Jersey*, No. 11-02223, 2012 U.S. Dist. LEXIS 80298 at *4 (D.N.J. June 11, 2012). Accordingly, Officer Gonzalez's Motion for Summary Judgment on Count Three of the Amended Complaint is **GRANTED.**

### v. Malicious Prosecution

Officer Gonzalez contends Mazur cannot assert a claim for malicious prosecution because

the action did not terminate in Mazur's favor. (ECF No. 32-1 at 25.)

A § 1983 claim for malicious prosecution requires the defendant "(1) instituted proceedings (2) without probable cause . . . (3) with legal malice; and (4) the proceedings terminated in favor of the plaintiff." *Trabal v. Wells Fargo Armored Serv. Corp.*, 269 F.3d 243, 248 (3d Cir. 2001). To satisfy the favorable termination element, the Third Circuit requires a prior criminal case to have been disposed on in a way that indicates the innocence of the accused. *Donahue v. Gavin*, 280 F.3d 371, 383 (3d Cir. 2002). Here, however, Mazur was found guilty on the obstruction charge and agreed to a conditional dismissal. (ECF No. 37-5, Ex. N.) A guilty finding precludes a claim for malicious prosecution because a plaintiff cannot satisfy the fourth prong of the claim. *See Lopez v. Cty. of Plainfield*, No. 12-4976, 2017 U.S. Dist. LEXIS 10220 at *44 (Jan. 25, 2017). Therefore, Mazur cannot state a claim for malicious prosecution. Accordingly, Officer Gonzalez's Motion for Summary Judgment on Count Five of the Amended Complaint is **GRANTED.**

### vi. NJCRA

In Count Eight of the Amended Complaint, Plaintiff asserts claims against Officer Gonzalez under the New Jersey Civil Rights Act that mirror her constitutional claims, i.e.: excessive force, false arrest, illegal search and seizure, malicious prosecution, and failure to intervene. (ECF No. 3 at 12.)

The NJCRA was modeled after § 1983 and therefore claims under the NJCRA are viewed "through the lens of § 1983." *Monticciolo v. Robertson*, No. 15-8134, 2017 U.S Dist. LEXIS 167895 at *61 (Oct. 11, 2017) (citing *Trafton v. Cty. of Woodbury*, 799 F. Supp. 2d 417, 443-44 (D.N.J. 2011)). Accordingly, Mazur's NJCRA claims are viewed analogously to her § 1983 claims. Therefore, Officer Gonzalez's Motion for Summary Judgment on the NJCRA claim of excessive force is denied. However, Officer Gonzalez's Motion for Summary Judgment on the NJCRA

claims for false arrest, illegal search and seizure, failure to intervene, and malicious prosecution is **GRANTED.**

### B. Claims Against Chief Hill and the Township

Mazur asserts § 1983 claims against both the Township and Chief Hill for supervisory liability and failure to train. (ECF No. 3 at 8-10.) To bring a claim against a municipality under § 1983, a plaintiff must assert a cause of action under *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978). Specifically, a municipal entity may only be held liable under § 1983 if "the action that is alleged to be unconstitutional implement[ed] or execute[d] a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or came about "pursuant to governmental 'custom.'" *Marran v. Marran*, 376 F.3d 143, 156 (3d Cir. 2004) (quoting *Monell*, 436 U.S. at 690-91). Nevertheless, to properly maintain a *Monell* claim, a court must determine: (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the municipality is responsible for that violation. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1149-50 (3d Cir. 1995). Similar to a § 1983 claim against an individual, a plaintiff may not maintain a derivative municipal claim if there is no constitutional violation in the first place. *Mulholland v. Gov't Cty. of Berks*, 706, F3d 227, 239 n.15 (3d Cir. 2013).

Once a plaintiff identifies a municipal policy or custom, she must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of the Cnty. Comm'rs. v. Brown*, 520 U.S. 397, 404 (1997). If the policy or custom does not facially violate federal law, causation may only be established by "demonstrat[ing] that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences. *Id.* at 407. A showing of simple negligence will not suffice." *Id.* For a § 1983 claim of failure to train or supervise municipal employees, a plaintiff must show that failure to provide training or

supervision amounted to "'deliberate indifference' to the rights of persons with whom the employee will come into contact." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014). Deliberate indifference may be demonstrated either by showing a pattern of violations which puts the municipal employee on notice that a new program is necessary or a single incident violation where the need for training was patently obvious. *Id.* at 223.

Using Mr. Rivera's report, Mazur contends Officer Gonzalez's continued employment despite eleven previous complaints—and a subsequent excessive force complaint—along with the police department's insufficient internal investigations, demonstrates Chief Hill and the Township were deliberately indifferent to a pattern of misconduct. (ECF No. 38-1 at 11-12.) Chief Hill and the Township contend Mr. Rivera's report is inadmissible because his methodology is not consistent with the *Daubert* standard. (ECF No. 33-2 at 12.)

Mr. Rivera reviewed answers to interrogatories and deposition transcripts of Mazur and Defendants, witness deposition transcripts, internal affairs files of Officer Gonzalez and other officers, and the police department's policies and procedures. (ECF No. 38-1 at 23.) After reviewing those materials, Mr. Rivera concluded the Township and Chief Hill "are aware of, acquiesce in and tacitly approve of a custom tolerating the use of excessive force by officers . . . and that [Township] of Marlboro's police officers are inadequately trained." (ECF No. 38-1 at 22.) Specifically, Mr. Rivera noted there had been 11 Internal Affairs complaints filed against Officer Gonzalez in a five-year period between 2010 and 2015. (*Id.* At 12.) In response to these reports, the Marlboro Police Department failed to conduct any interviews, prepare any investigation reports, or issue final dispositions. (*Id.*)

This Court has found similar expert reports—including ones filed by Mr. Rivera himself—to be admissible. *See Noble v. Cty. Of Camden*, 112 F. Supp. 3d 208 (D.N.J. 2015) (using Mr.

Rivera's report on police internal investigation procedures as a basis for denying summary judgment for Defendant on *Monell* claims); *see also Malik v. Hannah*, 799 F. Supp. 2d 355, 363 (D.N.J. 2011) (using evidence of a lack of investigations as a basis for denying summary judgment for Defendant on *Monell claims*); *D'Arrigo v. Gloucester Cty.*, No. 04-5967, 2007 U.S. Dist. LEXIS 44316 at *13 (D.N.J. June 19, 2007) (same); *Merman v. Cty. Of Camden*, 824 F. Supp. 2d 581 (D.N.J. 2010) (same).

Based on Mr. Rivera's report, this Court finds Mazur has provided sufficient evidence from which a reasonable jury could conclude the Township and Chief Hill were deliberately indifferent in investigating claims of excessive force. In viewing the evidence in light most favorable to Mazur, a reasonable jury could find Mr. Rivera's report demonstrates the Township and Police Department had a custom of failing to properly investigate internal affairs complaints preceding the incident. Based on their inaction, the Township and Chief Hill were deliberately indifferent to the need to properly investigate Internal Affairs complaints and thus partially complicit in the misconduct that ensued. *See Beck v. Cty. of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (noting that custom may "be established by evidence of knowledge and acquiescence"); *Monaco v. Cty. of Camden*, No. 04-2406, 2008 U.S. Dist. LEXIS 20825 at *8 (Apr. 14, 2008) (failure to investigate plaintiff's excessive force allegation until far after incident took place was evidence of existence of a custom of failing to investigate claims of police misconduct). Therefore, because a jury could reasonably infer the Township and Chief Hill had a custom of performing inadequate Internal Affairs investigations, the Court will permit Mazur's Monell claim in Count Six to proceed under a theory that Mazur's injuries resulted from the Township and Chief Hill's failure to conduct meaningful investigations. *See Noble*, 112 F. Supp. 3d at 224.

Additionally, Mazur has presented enough evidence to survive summary judgment on her

failure to train claim in Count Seven. To survive summary judgment on a failure to train claim, a plaintiff must "identify a failure to provide specific training that has a causal nexus with his or her injury" and additionally must demonstrate the failure to provide that training "can reasonably be said to reflect a deliberate indifference to whether constitutional deprivations of the kind alleged occur." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1030 (3d Cir. 1991). Here, Mr. Rivera identifies specific deficiencies in training, such as the failure to implement de-escalation training, failure to review Use of Force incident reviews and MVR footage, and the failure to train officers to avoid head strikes. (ECF No. 38-1 at 23-25.) Based on these precise deficiencies, a jury could reasonably infer the lack of training could have resulted in Mazur's injury from Officer Gonzalez's punch.

Accordingly, the Township and Chief Hill's Motion for Summary Judgment on Counts Six and Seven of the Amended Complaint are **DENIED.**

### III. CONCLUSION

For the foregoing reasons, the Township and Chief Hall's Motion for Summary Judgment is **DENIED**, and Officer Gonzalez's Motion for Summary Judgment is **DENIED in part and GRANTED in part**. An appropriate Order will follow.

**Date: January 23, 2020**  */s/ Brian R. Martinotti*
　　　　　　　　　　　　　　　　　　　　　　　　　　　　**HON. BRIAN R. MARTINOTTI**
　　　　　　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**